FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 JUL 18 AM 10: 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

VERONICA HILL,               )
                             )
         Plaintiff,          )
                             )
v.                           )        Case No. CV-00-TMP-3594-S
                             )
MERCEDES-BENZ U.S.           )
INTERNATIONAL, INC.,         )        **ENTERED**
                             )
         Defendant.          )        JUL 18 2002

**MEMORANDUM OPINION**

    This action is before the court on a motion for summary
judgment filed by defendant Mercedes-Benz U.S. International, Inc.,
("Mercedes") on September 19, 2001.  The parties have consented by
stipulation to the exercise of jurisdiction by the undersigned
pursuant to 28 U.S.C. § 636(c).  The motion has been supported by
a brief and evidence.  Plaintiff failed to timely file a brief or
offer evidence in opposition to the motion.[1]  Having reviewed the

---

    [1]    Several days before defendant filed the instant motion,
plaintiff's counsel filed a motion to withdraw.  Plaintiff filed
a *pro se* response to the motion on September 14, 2001.  The
motion was granted and plaintiff was advised to locate another
attorney as soon as possible.  On December 17, 2001, plaintiff
filed a *pro se* motion seeking 90 additional days in which to
retain counsel.  The court granted the motion on December 18,
2001, giving plaintiff 45 days in which to retain other counsel.
On January 28, 2002, plaintiff filed another *pro se* motion,
advising the court that she had located an attorney and needed
additional time in which to conduct discovery.  The court stated
that the motion would be granted upon filing of a notice of



motion, the brief, and the evidence presented by the defendant, the court finds that the motion for summary judgment is due to be granted.

## II.  FACTS

For purposes of assessing defendant's motion for summary judgment, the following facts are presumed to be true.  The plaintiff is a black female.  She concedes that she has never heard anyone at Mercedes make any racial slurs.[2]  Her complaint states three claims pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*: (1) that she was discriminated against in the workplace on account of her pregnancy, sex, and race by being denied transfers and training; (2) that she was subjected to a hostile work environment on account of her sex, race, and pregnancy; and (3) that she was retaliated against for filing charges with the Equal Employment Opportunity Commission.  More specifically, the plaintiff asserts

---

appearance by the attorney for plaintiff.  No such notice was filed, and plaintiff then notified the court by letter that she wished to proceed *pro se* and needed a further extension of time in which to conduct discovery and to respond to the motion for summary judgment.  The court deemed the letter to be a motion, granted it, and treated plaintiff's requests as discovery motions.  Defendant was directed to respond, and the plaintiff was given until July 1, 2002, to respond to the motion for summary judgment.  To date, no response has been filed.

[2]     The only sex-based comment of which she complains is the hearsay statement that one of the workers didn't want any more women working in a specific area of the Paint Shop.

2

that she was discriminated against during her pregnancy in 1998 in
that she was not allowed to transfer out of the Paint Department to
an area with less exposure to chemicals.  She also asserts that she
was denied a transfer to another area within the Paint Shop and was
denied a transfer to a maintenance apprenticeship program in April
1999.  She further alleges that she was wrongfully given "write-
ups" or disciplinary actions after she returned to work in November
1998.  Finally, plaintiff complains that she was wrongfully
transferred in violation of Mercedes' policies and was ultimately
wrongfully terminated for discriminatory reasons.  In addition,
plaintiff asserts that she was retaliated against for filing EEOC
charges, for filing a complaint with OSHA alleging unsafe working
conditions, and for participating in union organization
activities.[3]

Hill's claims arise from her employment at Mercedes as a
laborer in the Paint Shop.  She began her employment at Mercedes on
June 2, 1997, and was terminated in November 1999.  Most of Hill's
problems on the job appear to have arisen in 1998, while she was
pregnant.  She complained about the duties and environment involved
in her assigned work station, asserting that she did not want her

---

[3]    The court notes, however, that only the filing of the
EEOC charge is a "protected activity" that would give rise to a
Title VII claim.  Her complaint does not set forth any viable
claim in relation to any alleged retaliation on account of her
OSHA complaint or her union activities.

3

unborn baby exposed to "chemicals." Mercedes assigned her to a different job within the Paint Shop which did not involve work with any potentially hazardous chemicals. In January 1998, Hill complained that she had a rash on her face caused by the chemicals. Mercedes' medical department determined that the "rash" was acne, aggravated by the respirator she wore at work. Before she left work due to her pregnancy in April 1998, Hill was involved in several incidents in which she was away from her work station without permission or was late.

Hill wrote a letter in March 1998 to the president and CEO of Mercedes, complaining that a female supervisor, Frieda Drymon, created a "stressful and hostile" work environment. Her description of that environment, however, was totally unrelated to sex or race; rather, Hill complained that Frymon was unpleasant, vindictive, and demanded that Hill work overtime when she should not have been required to. Hill further complained to Drymon and to Mercedes' Human Resources department that Drymon was "an ineffective communicator," lacked "interpersonal skills," and was "obviously incapable to make sound decisions alone." Hill stated that Drymon's treatment extended to her fellow "team members"; her letter did not state or even imply that Drymon's behavior was motivated by or related to gender or race.

4

On April 13, 1998, Hill received a Level One Corrective Action Report for leaving her work station without permission.[4]  Mercedes notified Hill by letter on April 17, 1998, that she was in violation of the Attendance Guidelines and Code of Conduct Policy, copies of which were attached to the letter.  Hill was told that the company had concerns about her attendance, her performance, her "team work," and her provision of proper medical documentation. She was informed: "Failure to adhere to these policies is a very serious offense and one that [Mercedes] cannot and will not tolerate and could result in self-termination."  Hill further was directed to provide to management a plan for correcting the deficiencies in her job performance.  In response, Hill provided a document titled "Proposed Plan for Elimination of Hostile Work Environment to Promote a More Productive Workforce," in which Hill outlined her "methods" for obtaining a "speedy recovery" of Mercedes' employees' "team spirit" and "morale."  By letter dated April 23, 1998, Mercedes told Hill that her "plan" did not meet the criteria set forth by Mercedes in that it failed to address her attendance, performance, team work, or failure to obtain proper

---

[4]    Mercedes has an escalating scale of discipline, the severity of which increases with the frequency or severity of the offending conduct.  The scale is set forth in Mercedes' Attendance Guidelines and Code of Conduct Policy, attached as exhibits to the brief in support of the motion for summary judgment.

medical documentation. Hill responded with another letter, but did not offer any plan for correcting deficiencies in her work performance, other than to suggest that Mercedes provide better leadership.

After Hill returned to work from pregnancy leave, she received two "occurrences" for arriving late to work on December 23, 1998. Hill claims she was not informed of these "occurrences" until 35 days later. On January 22, 1999, she received a second Level 1 Corrective Performance Review because she arrived late to work. On May 14, 1999, Hill received a Level II Corrective Performance Review for leaving her work station without permission.

About the same time, on May 10, 1999, Hill wrote a letter to an attorney for Mercedes, alleging that Tom Daniels, a supervisor, had set up a rotation schedule by which workers rotated from the car underbody area to the "lower deck" areas, and had given male workers first priority in the rotation.[5]

On June 11, 1999, Hill reported that she was assaulted by a female management employee, who pressed against her with her shoulder in the locker room. Hill responded by saying, "Get the fuck out of my way, woman." Hill then told her not to provoke her

---

[5]     There is no allegation that appears related to this incident in the complaint.

6

again.  Hill contacted the police and attempted to press charges against the female employee.

On June 18, 1999, Hill received a Level III Corrective Performance Review Report after arriving late for work.  On July 1, 1999, Mercedes notified Hill by letter that she was being placed on a "decision making suspension" for one day with pay because she had received her third active corrective performance review within 180 days.  She was directed to report to the Human Resources department the following day with a written plan addressing her attendance issues.  She responded with a letter that stated: "As you are aware, the issues for which I have received corrective performance reviews have all been issues that were beyond my control."

On September 8, 1999, Hill was told to clean an area of the Paint Shop.  Her supervisor, Tom Daniels, reported that Hill "blatantly ignored" his repeated instruction to clean the area.  He alleged that she ignored his orders and left the Paint Shop.  She was given another Level III Corrective Performance Review Report, this one citing insubordination.  She again was placed on paid decision making leave.

On September 15, 1999, Mercedes' Paint Production Manager notified Hill that further discipline infractions would not be tolerated, and that any further "occurrence" would result in a recommendation that she be terminated.  On November 4, 1999, Hill

7

called a supervisor and said she would be taking four hours of holiday compensatory time because she was in traffic court waiting for her case to be heard. She did not report to work at all on November 4. On November 5, she called an automated phone to tell her supervisor she needed another day off to handle personal business. Upon returning to work on November 8, 1999, Hill indicated that she had been placed in jail and could not report for work. These incidents resulted in the filing of a Level IV Corrective Action Report. The incident also violated her "last chance agreement" set forth in the September 15 letter. Mercedes fired Hill effective November 11, 1999.

In December of 1999, Hill complained that she should have received a portion of the bonus distributed on December 14, 1999. She was told that the bonus was only paid to workers who still were employed at the time the bonus was awarded.

On May 29, 1999, plaintiff filed her first charge of discrimination with the EEOC, asserting that she had been discriminated against on account of her race and sex, and that she had been retaliated against. On February 7, 2000, plaintiff filed a second EEOC charge, claiming that she was subjected to illegal retaliation in that she was unfairly disciplined and terminated. On September 28, 2000, she received her notice of right to sue from the EEOC arising from her first charge. On December 14, 2000, she

8

filed the complaint commencing this lawsuit.  On February 20, 2001, plaintiff received her right-to-sue letter from the EEOC regarding the second charge.

The defendant claims that many of plaintiff's claims are time-barred because the claims arose more than 180 days before the plaintiff filed her EEOC charge.  Defendant further asserts that the plaintiff has failed to establish the elements of a discrimination claim or a hostile environment claim, and that she cannot show any causal connection between the alleged protected activity and the alleged retaliatory act.  Accordingly, defendant argues, all of the claims are due to be dismissed.

### III.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

9

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

10

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id</u>. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Id</u>. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Id</u>. at 251-52; <u>see also</u> <u>Bill Johnson's Restaurants, Inc. v. N.L.R.B.</u>, 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249 (citations omitted); <u>accord</u> <u>Spence v. Zimmerman</u>, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court

11

must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.  DISCUSSION

### A.  Statute of Limitations

As a prerequisite to filing a suit under Title VII, a plaintiff first must file an EEOC charge. See 42 U.S.C. § 2000e-5(e). Plaintiff further has the burden of proving that she timely filed an EEOC charge before she may bring suit under Title VII. See Maynard v. Pneumatic Products Corp., 256 F.3d 1259, 1262 (11th Cir. 2001)(citing Love v. Pullman Co., 404 U.S. 522, 523, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972). Claims based on events that occurred

more than 180 days before the EEOC charge is filed are time-barred. See United Air Lines, Inc. v. Evans, 431 U.S. 553, 555 nn. 3, 4, 97 S. Ct. 1885, 52 L. Ed. 2d 571 (1977).

Plaintiff filed her first EEOC charge of discrimination on May 29, 1999. Any such charge must be filed within 180 days of the alleged discrimination. Accordingly, any discriminatory event that occurred before November 29, 1998, is time-barred.

All of plaintiff's claims that arise from alleged discriminatory treatment during her pregnancy occurred no later than May of 1998, when she left work for disability related to the pregnancy.[6] Consequently, those claims are due to be dismissed as time-barred.

Most of the claims set forth in plaintiff's complaint do not specify a date. However, plaintiff generally complains about corrective actions and/or disciplinary actions brought against her. The defendant has demonstrated that some of these actions took place in March and April of 1998.[7] Accordingly, any claim arising

---

[6]     These claims also are due to be dismissed because they were not asserted in any complaint made to the EEOC and, therefore, plaintiff has failed to meet the administrative prerequisite to the lawsuit.

[7]     Specifically, defendant has offered evidence relating to a Corrective Action Report dated April 13, 1998, in which plaintiff was accused of leaving the assembly line without authorization; a Warning Letter dated April 17, 1998, citing continued performance problems; and a letter dated April 23, 1998, advising plaintiff to improve her work performance.

13

from actions taken in March and April of 1998 also are due to be dismissed pursuant to the 180-day statute of limitation and the court considers the merits of plaintiff's remaining claims.

## B.  Discrimination

Under Title VII, a plaintiff asserting a disparate treatment claim must prove that the defendant had discriminatory intent either through direct or circumstantial evidence. Denney v. City of Albany, 247 F.3d 1172, 1182 (11th Cir. 2001).   Direct evidence establishes that intent without the need for any inference or presumption.  Id., quoting Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).   Where there is no direct evidence, the plaintiff must prove intent in accordance with the method first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  This requires Hill to prove that she is a member of a protected class, and that equally or less qualified employees who were not members of the protected class were treated differently.

Evidence that a similarly situated employee engaged in the same conduct and was not disciplined, or was given a more lenient disciplinary action, is evidence to support a disparate treatment claim.  In order to offer such proof, however, the plaintiff first must show the existence of a valid comparator: an employee

14

"involved in or accused of the same or similar conduct" who is nevertheless disciplined in a more favorable way.  Anderson v. WBMG-42, 253 F.3d 561, 564 (11th Cir. 2001) quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).[8]  Absent evidence sufficient to show that a similarly situated employee was treated differently, a disparate treatment claim must fail.  See, e.g., Abel v. Dubberly, 210 F.3d 1334, 1338 (11th Cir. 2000).

If Hill proves her *prima facie* case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions - in this case the denial of transfers, the application of discipline policies, and termination.  If the employer meets its burden of articulating a non-discriminatory reason, the burden shifts back to the plaintiff to show that the reason is a pretext. She may meet her burden by showing either that the reason given is not worthy of belief or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason.  Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998), citing Combs v. Plantation Patterns, 106

---

[8]     There has been much debate as to whether a comparator's conduct must be virtually identical to plaintiff's, as in Maniccia v. Brown, 171 F.3d 1364 (11th Cir. 1999), or whether the offending conduct need only be of "comparable seriousness," as in Anderson, 253 F.3d at 565.  This case, however, does not present such a close call, because plaintiff has failed to offer examples of employees who engaged in either identical conduct, or conduct of "comparable seriousness."

F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

As to plaintiff's claim that she was subjected to illegal discrimination on account of her race and sex, she specifically alleges that she was: (1) denied training, (2) denied transfers to other jobs,[9] (3) denied participation in an apprenticeship program, and (4) wrongfully subjected to disciplinary "write-ups".[10]

The flaw fatal to these claims lies in plaintiff's complete failure to name any comparator. Plaintiff has not identified any similarly situated male or non-black employees who were treated more favorably than she was in relation to training, apprenticeship, discipline, or termination.

Plaintiff has alleged that Debbie Hunter, a white female, was given favorable treatment in that she was allowed to take a day off

---

[9]    Plaintiff's claim relating to denial of training appears to be repetitive of her claim that she was denied admission to the apprentice program because it is the only specific instance of training she mentions in her complaint or the portions of the deposition made available to the court.  Her claim relating to transfers similarly is repetitive of her claim relating to the apprenticeship because she stated at deposition that the only transfer she ever requested and was denied was made prior to May 1998, when she was pregnant.  (Hill Depo., p. 211).

[10]    Defendant correctly asserts that three of the disciplinary actions complained of in her deposition occurred before November 29, 1998.  The Corrective Action Report dated April 13, 1998, the Warning Letter dated April 17, 1998, and her letter regarding improved performance dated April 23, 1998, all are subject to the time-bar discussed supra.

to visit her gynecologist, while plaintiff was denied time off that she had requested for the same day.  Plaintiff conceded in her deposition that Hunter took the time off because she underwent a surgical procedure on that day.  The defendant has offered evidence that Hunter was given the day off because Hunter's reason for the day off was an emergency medical procedure.  Hill does not allege, and certainly offers no evidence, that she had any medical or emergency reason for her request for the day off.  She stated that she wanted half a day off "to place my child in a night care facility."  Defendant has not argued that such an event fails to constitute a "term or condition" of employment.  The court assumes, without deciding, that the rejection of a request for a day of leave is a term or condition that triggers the application of Title VII.  Even so, Hunter is not a comparator.  Because she requested time off for an emergency medical procedure, she is not "similarly situated" to Hill, who requested time off to handle personal business for her child.

Plaintiff also alleges that Wade Rawls, a white male, was not disciplined for failing to report for work one day, but that she was disciplined for missing a scheduled workday.  Plaintiff admits that Rawls called in to report that he had a flat tire and would be late, and that she does not know if Rawls requested or was given leave for the day of work that he missed.  Moreover, plaintiff

17

fails to demonstrate that Rawls was not disciplined.[11]  Finally, plaintiff has not alleged the reason she gave to Mercedes for having missed a scheduled work day.  Similarly, plaintiff alleges that Larry Box, a white male, was not disciplined in the same manner as she was when he failed to clean the work area.  The defendant asserts that Box did not refuse a direct instruction from a manager to clean the area, as did plaintiff, and that Box did not have a history of disciplinary actions comparable to plaintiff's. Accordingly, plaintiff has failed to offer a valid comparator in relation to any instance of alleged race discrimination in disciplinary actions taken by Mercedes.

In addition, plaintiff complains that her request for transfer to a "maintenance apprenticeship program" in April 1999 was rejected on the basis of Corrective Actions.  Plaintiff has failed to demonstrate that any non-minority employee was allowed entrance into the apprenticeship program.  Furthermore, she has failed to show that any employee with a similar disciplinary record was allowed entrance into the program.[12]  Plaintiff's claim relating

---

[11]    Plaintiff alleges in her deposition only that Rawls called in to say he would be late because he had a flat tire. Hill does not know what Rawls discussed with the supervisor or whether Rawls obtained permission to take the day off.

[12]    Mercedes notified Hill that her invitation to the apprenticeship program was being withdrawn because she had an active disciplinary action, which comports with Mercedes' qualifications for acceptance into the program.

to the bonus pay also is due to be dismissed.  Plaintiff has not alleged that any worker who was terminated received part of the bouns.   Consequently,  because  plaintiff  again  has  failed  to identify  a  valid  comparator,  these  claims  also  are  subject  to summary adjudication in favor of Mercedes.

### C.  Retaliation

The  defendant  asserts  that  plaintiff's  claims  are  due  to  be dismissed because she has failed to establish a *prima facie* case of retaliation.   In order to survive a properly supported motion for summary judgment, the plaintiff in a Title VII retaliation case must establish a *prima facie* case by showing: (1) that she engaged in protected conduct and (2) suffered an adverse employment action, that was (3) causally linked to the protected expression.  Taylor v. Runyon, 175 F.3d 861, 868 (11th Cir. 1999).   In addition, the plaintiff  must  show  that  her  employer  was  aware  of  her participation in the protected activity when it took the adverse action.  Maniccia v. Brown, 171 F.3d 1364,1369 (11th Cir. 1999).

The plaintiff in a retaliation case under Title VII must show that there is some causal relation between the act of opposing discrimination and the adverse employment action.  Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).  The causal link requirement is to be construed broadly, and the Eleventh Circuit

Court of Appeals has stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Id. at 1460, quoting EEOC v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). However, to meet even this low threshold of proof of causation, the plaintiff must offer some evidence from which a jury could infer that the filing of the EEOC charge caused the termination or other adverse action.

Even if the plaintiff had succeeded in establishing a *prima facie* case, the presumption of discrimination may be rebutted if the employer offers a legitimate, nondiscriminatory reason for the employment action. Once the employer meets its burden of articulating a non-discriminatory reason, the burden shifts back to the plaintiff to show that the reason is either not worthy of belief or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998). The court's job is to consider whether the evidence "presents a sufficient disagreement to require submission to a jury." Combs, 106 F.3d at 1526. The court finds little or no support for Hill's argument that the reason is a pretext.

20

Plaintiff alleges that she was wrongfully denied transfers[13] and terminated in retaliation for filing EEOC charges.[14] Plaintiff has not offered any evidence, or even proposed any factual scenario, to support a conclusion that Mercedes' motive in firing her was retaliatory. In fact, plaintiff admitted that she never heard any derogatory comments from anyone at Mercedes about her EEOC charge. Nothing offered by the plaintiff indicates that the decision-maker who fired and/or disciplined plaintiff even knew that she had filed an EEOC charge.[15] Moreover, the filing of the

---

[13]   The first EEOC charge was not filed until May 29, 1999. The denial of a transfer to the apprenticeship program - the only transfer at issue - occurred in April 1999. Accordingly, there is no factual support for any allegation that the charge motivated the denial because the denial preceded the charge. Even if plaintiff engaged in some other "protected activity" before April 1999, plaintiff has failed to demonstrate any causal connection between the protected activity and the denial.

[14]   It is not clear from the complaint whether plaintiff is alleging that her disciplinary actions were retaliatory and resulted in her discharge, or whether she alleges that the termination itself was retaliatory. It does not matter for purposes of the instant motion, because plaintiff has failed to allege sufficient facts to form the basis of any claim of retaliation.

[15]   Had plaintiff responded to the motion for summary judgment, the court assumes that she would argue that the "protected activity" occurred earlier than May 1999, when she submitted a "proposal" to Mercedes titled "Proposed Plan for Elimination of Hostile Work Environment to Promote a More Productive Workforce." An examination of that document and of the events that led to its creation leads the court to conclude that, even though Hill refers to a "hostile work environment," plaintiff was complaining of or opposing an environment of rude or bullying behavior by two female employees. Nowhere in Hill's

21

first EEOC charge came six months before her termination.   The
second charge was filed only after her termination.   Furthermore,
two of the four disciplinary actions plaintiff received occurred
before the EEOC charge was filed.   Neither the frequency nor the
severity of the discipline increased after she filed the charge.[16]
In sum, plaintiff has failed to demonstrate either that the
disciplinary actions were imposed for any retaliatory reason or
that the resulting termination was motivated by a desire to
retaliate.   To the contrary, the defendant has demonstrated that it
followed its own policies and procedures regarding the discipline
imposed on Hill.   Mercedes has presented legitimate, non-
discriminatory reasons for its actions.   Accordingly, summary

---

proposal, or in any of the documents reciting her long history of
complaints lodged against the company and her history of
performance problems, is there any reference to any "hostile
environment" that involves race or sex discrimination.
Accordingly, any complaints voiced prior to the EEOC charge are
not considered a "protected activity" which gives rise to a Title
VII claim.

[16]     This is not to say that the ultimate consequence of the
disciplinary occurrences did not increase.   Mercedes implemented
a progressive scale of discipline, under which continuing
violations result in termination.   Mercedes' policy called for
plaintiff's termination after she: (1) received the requisite
number of disciplinary notices, (2) failed to correct the
deficiencies in her performance, and (3) committed further
infractions.   There is no evidence that any similarly situated
male or non-black employee committed an equal number of
infractions and was not terminated, or that the policy was
applied unfairly to workers according to their race or gender.
(See Defendant's Ex. 32).

judgment is due to be granted in favor of Mercedes on all of Hill's retaliation claims.

### CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented in support of the motion for summary judgment, this court determines that defendant's motion for summary judgment (court document #18) against plaintiff is due to be granted and all claims against defendant Mercedes are due to be dismissed with prejudice.

A separate order will be entered herewith granting summary judgment in favor of Mercedes on all of plaintiff's claims.

Dated the 17th day of July, 2002.


T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

23